**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-22-02701-001-TUC-JGZ (MAA) |
| Plaintiff, | **ORDER** |
| v. | |
| Jorge Armando Fuentes-Pacheco, | |
| Defendant. | |

Pending before the Court is Defendant Jorge Armando Fuentes-Pacheco's Objection to Government Notice of Confessions, Admissions, & Statements Per Local Rule 16.1. (Doc. 44.) The Court construes this Objection as a Motion to Suppress Statements. Defendant seeks to suppress statements he made regarding ownership of his vehicle and his consent to search his phone which was obtained after he invoked his *Miranda* rights. (Doc. 44.) For the reasons discussed below, the Court will deny the Defendant's motion.

## BACKGROUND[1]

On November 18, 2022, Defendant attempted to enter the United States through the DeConcini Port of Entry in Nogales, Arizona. Defendant was the driver and sole occupant of a 2010 Jeep Grand Cherokee. (Doc. 44 at 2.) A U.S. Customs and Border Patrol inspector conversed with Defendant and entered his information into the computer system, which returned with an alert for the Jeep. (Doc. 58 at 2.) According to Defendant, he immediately

---

[1] The parties have stated that an evidentiary hearing is not necessary to resolve the Defendant's motion.

told the inspector that he was on probation. (Doc. 44 at 2.) The inspector, who thought Defendant was overly talkative, referred Defendant to secondary inspection. (Doc. 58 at 2.)[2]

During the secondary inspection, officers observed indicators that the vehicle may be being used to transport contraband. (*Id*.) The vehicle was x-rayed. (Doc. 44 at 2.) After officers detected anomalies in the x-ray of the vehicle, Defendant was taken from the vehicle to a private secure waiting area, away from the vehicle. (Doc. 58 at 2; Doc. 44 at 3.) The vehicle was searched and contraband was found. (Doc. 44 at 3.)

Officer Carrera arrived at the scene and conversed with x-ray operators and others involved in vehicle search. (*Id.*) Officer Carrera then went to the secure waiting area and questioned Defendant. (*Id.*) He began the interview by asking Defendant biographical questions. (*Id.*) Then he asked about ownership of the vehicle. (*Id*. at 3-4.) Defendant answered Officer Carrera's questions. (*Id*. at 4). After Defendant stated he did not own the vehicle but was in the process of purchasing it, Officer Carrera read Defendant his *Miranda* rights. (*Id.*) Defendant immediately declined to speak with Officer Carrera further and requested an attorney. (*Id.*) After Defendant invoked his rights, Officer Carrera asked Defendant for consent to search his phone and Defendant signed a waiver consenting to search of his phone. (*Id*.)

**ARGUMENT AND DISCUSSION**

First, Defendant argues that he did not receive adequate *Miranda* warnings prior to questioning about the ownership of the Jeep, in violation of his Fifth Amendment rights. Second, Defendant argues his statement granting consent to the search the phone was taken in violation of his *Miranda* rights. He argues for the suppression of both statements. Presumably Defendant also seeks suppression of items found on the phone. The Court will analyze each of Defendant's statements separately.

---

[2] Defendant appears to believe that he was referred to secondary inspection due to the inspector receiving an NCIC alert that Defendant was on probation. (Doc. 44 at 2.) The Government states the referral was based on Defendant's talkativeness and the computer-generated vehicle alert. This factual issue does not affect the analysis.

### A. Statements about vehicle Prior to *Miranda* warning

Defendant's statements prior to administration of the *Miranda* warning were not made during a custodial interrogation and are therefore admissible.

*Miranda* warnings are required before custodial interrogations. *See Rhode Island v. Innis*, 446 U.S. 291 (1980). Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody…" *See Miranda v. Arizona*, 384 U.S. 436, 469 (1966). Whether someone is in custody for *Miranda* purposes is usually determined by assessing "whether a reasonable innocent person in such circumstances would conclude that after brief questioning he or she would not be free to leave." *United States v. Cabrera*, 83 F.4th 729, 734 (9th Cir. 2023). However, there are many scenarios in which a person detained by law enforcement officers, is not free to go, but is not in custody for *Miranda* purposes. *Id.* Special rules apply in the context of questioning at the border. *United States v. Butler*, 249 F.3d 1094, 1098 (9th Cir. 2001). "The mere detention of a person in a border station's security office from which he or she is not free to leave, while a search of a vehicle occurs is not 'custody' for *Miranda* purposes." *Id.* at 1100. Whether a person is in custody at the border for *Miranda* purposes is determined by looking to the objective circumstances of the place where the questioning occurs, the degree of pressure applied to detain the individual, the duration of the detention, and the extent to which the person was confronted with evidence of guilt. *Id*. at 1099.

In *Butler*, the Ninth Circuit pointed to *United States v. Leasure*, 122 F.3d 837 (9th Cir. 1997), as an example of a typical border case. There, Leasure drove a van from Mexico to the port of entry where she was asked questions. *Leasure*, 122 F.3d at 838. After a drug-detection dog alerted to her van in the primary inspection area, Leasure was instructed to get out of the vehicle and was escorted to the secondary inspection area where she was not free to leave. *Id.* at 839. While she waited in secondary, marijuana was found in the van. *Id*. Leasure argued she was in custody when she was asked questions in primary inspection. *Id*. at 839-840. The Ninth Circuit disagreed. Looking to the objective circumstances of the interrogation, not to the subjective view harbored by either the suspect or the interrogating

- 3 -

officers, the court concluded that that Leasure was not in custody for *Miranda* purposes when she was asked to step out of the vehicle. *Id.* at 840. The court stated: "Stops and routine questioning are the norm at the border in the primary inspection areas. In most cases, the *earliest* that a person could be in custody is at the point when she is moved into a secondary inspection area and asked to exit her vehicle while it is searched." *Id.* at 840 (emphasis added).[3]

       Defendant asserts that he was in custody at the time he was taken to a secure area at secondary inspection. Considering the objective circumstances surrounding Officer Carrera's questioning of Defendant and the scope of the inquiry, the Court concludes that Defendant was not in custody until *Miranda* warnings were administered. Although the Defendant was questioned in a secure waiting room, there is no suggestion that Officer Carrera pressured Defendant in any way or that the questioning was anything but brief. Carrera asked basic biographical questions, then asked about ownership of the vehicle. Once it became apparent from Defendant's response that Defendant had an ownership interest in the vehicle, Officer Carrera administered *Miranda* warnings. Questions about the ownership of a vehicle made at a port of entry are the type of routine inspection questions one would expect when entering the United States in a vehicle. *See Cabrera,* 83 F.4th at 735 ("[Agent's] question about Cabrera's purpose for being in the United States did not 'exceed the scope of allowable inquiry during stop' because it was 'reasonably related in scope to the justification' for it, i.e., [the Agent's] suspicion that Cabrera might have been entering illegally."); *United States v. Ozuna*, 170 F.3d 645, 659 (6th Cir. 1999)

---

[3] Recently, in *United States v. Cabrera*, 83 F.4th 729, 734–35 (9th Cir. 2023), the Ninth Circuit stated that "*Miranda* challenges at the border" should be analyzed by asking whether the detention constituted a permissible *Terry* stop, or something more. *Id.* at 734. The court explained that in such cases, the court has always examined whether the officer limited questioning to investigating the suspicion that prompted the stop. *Id.* at 734-35. Thus, in evaluating whether Cabrera was entitled to *Miranda* warnings, the court considered whether the officer's questioning of Cabrera in between the border fences was permissible pursuant to *Terry*, rather than whether he was "in custody" pursuant to *Miranda. Id.* at 735. Although Cabrera and the cases cited therein did not involve questioning during inspection at a port of entry, the reasoning is equally applicable to searches at a port of entry. Under either test, Defendant was not in custody for *Miranda* purposes.

("[A] reasonable person in defendant's situation would have understood that he might be subjected to considerable questioning by officers responsible for determining the identity and citizenship of those who seek to come into the United States.").[4] Such questions would be within the scope of a *Terry* stop where the investigating officer had reasonable suspicion that a suspect may have been responsible for drugs concealed within their vehicle. As a result, the Court concludes that the Defendant was detained, but not in custody, at the time he discussed his ownership interest in the Jeep.

### B. Statement giving consent after *Miranda*

Defendant's post-*Miranda* consent to the search of his phone is not protected by *Miranda* and Officer Carrera did not violate Defendant's *Miranda* rights in requesting consent to search his phone.

A person has a Fifth Amendment right to assistance of counsel during custodial interrogations. *Miranda*, 384 U.S. at 469. Once a person has invoked their right to counsel, there can be no further questioning by law enforcement. *Id* at 444-45. Although the Supreme Court has not addressed whether *Miranda* requires police to stop asking for consent to search once the defendant invokes his right to an attorney, many courts, including the Ninth Circuit, have held that consent to a search is not the type of incriminating statement toward which the Fifth Amendment is directed. *See Morejon v. Dep't of Child. & Fam. Servs.,* No. CV1600926SJORAO, 2016 WL 11746001, at *10 (C.D. Cal. Dec. 16, 2016), citing *United States v. Lemon,* 550 F.2d 467, 472 (9th Cir. 1977). In *United States v. Perez-Lopez*, 348 F.3d 839 (9th Cir. 2003), the Ninth Circuit stated, "*Miranda* warnings do not in terms address the right to refuse to agree to a search but rather focus on involuntary incriminating statements." *Perez-Lopez,* 348 F.3d at 846. Voluntary consent to search does not require being advised of a right to refuse consent. *Schneckloth v. Bustamonte,* 412 U.S. 218, 231 (1973). A person in custody can give voluntary consent to a search. *See United States v. Watson,* 423 U.S. 411, 598 (1976).

Here, Defendant, while in custody, was asked for his consent to search his phone by

---

[4] Neither party suggests that Officer Carrera confronted Defendant with evidence of guilt during the questioning.

a law enforcement officer after he invoked his right to counsel and to remain silent. (Doc. 58 at 2.) His consent is not an incriminating statement protected by *Miranda* and therefore is not excludable on this basis.

### C. Voluntariness

Defendant argues that his statements were made in a coercive environment created by law enforcement where he submitted to an x-ray of the vehicle because he was on probation; he was questioned about his probation status; he was not permitted to leave the inspection at the point of entry; and he was taken to a secure area at the secondary inspection before detection of the contraband. (Doc. 44 at 2-4.) The Defendant has described a typical entry into the United States and Defendant's argument that his statements about ownership of the vehicle or the giving of consent were not voluntary is not persuasive when evaluated under the applicable legal principles.

The Court considers whether a *Miranda* warning was given, among the following factors, when assessing the voluntariness of consent: "(1) whether defendant was in custody; (2) whether the arresting officers had their guns drawn; (3) whether *Miranda* warnings were given; (4) whether the defendant was told he had the right not to consent; and (5) whether the defendant was told that a search warrant could be obtained." *See United States v. Jones,* 286 F.3d 1146, 1152 (9th Cir. 2000). Factor 1 favors the Defendant. Factors 2, 3, 4, and 5 favor the Government. Notably, Defendant had just received *Miranda* warnings when he consented to search of his phone. Under the totality of the circumstances, the Court concludes Defendant's consent was voluntarily given.

With respect to Defendant's statements about the vehicle, there are no indicators that Defendant's will was overborne by the circumstances. *Dickerson v. United States*, 530 U.S. 428, 434 (2000). The questioning was brief. Defendant had previous experience with the criminal justice system, including having been questioned at the port of entry. Defendant does not indicate he was confused or did not understand what officers were communicating to him. There is no evidence of threats or promises by law enforcement which could have overcome Defendant's will.

**CONCLUSION**

A court will suppress a defendant's statements when they are found to have been obtained in violation of the defendant's constitutional rights. The Court finds that Defendant's statements about ownership of the Jeep and his giving of consent were not statements obtained improperly by law enforcement. Defendant's statements were voluntarily made and are admissible. Accordingly,

**IT IS ORDERED** Defendant's Motion to Suppress (Doc. 44) is **denied**.

Dated this 20th day of February, 2024.

Jennifer G. Zipps
United States District Judge